JOSEPH A. BARR, Respondent, *v.* HENRY L. FISH and HENRY L. FISH, JR., Appellants.

*Principal and agent — possession by a tenant under the agent — when that of the agent and when of the landlord — agent not treated as having a right hostile to his principal.*

Where, pursuant to an agreement made between a principal and his agent, the latter has the right to the possession of a certain house and lot, the property of the former, by virtue of a contract made between them for the exchange thereof for other property, and the agent rents such property to a tenant by a verbal lease, without assuming to represent the principal, and such tenant goes into occupation, the agent will be deemed to have thereby entered into possession of the property; but if the agent had no right to the possession of the property he will not be treated as having a relation to the premises hostile to that of his principal in whose behalf he accepted the relation of agency.

APPEAL by the defendants, Henry L. Fish and another, from a judgment of the County Court of Monroe county in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 23d day of November, 1894, upon the verdict of a jury, and

also from an order entered in said clerk's office on the 21st day of January, 1895, denying the defendants' motion for a new trial made upon the minutes.

The purpose of the action was to recover the amount of rents which it is alleged the defendants, as agents of the plaintiff and his partner, Nathaniel L. Barr, received from a tenant of certain premises known as the Grand avenue house and lot in the city of Rochester. The defendants by their answer allege that during the time such rents accrued they were in possession of the premises under a contract of purchase from the Messrs. Barr. On the trial it appeared that a contract in writing had been made between those parties of which the following is a copy :

"A contract and agreement made and entered into between J. A. & N. L. Barr, of Rochester, N. Y., of first part, and H. L. Fish & Son, of the same place, second part, to wit : That farm of ten acres on the Lyell road of one John Shaw, now under foreclosure sale and about to come into the hands of said Fish & Son, in which event said Barr Bros. agree to trade house and lot known as 123 Grand Avenue, all taxes and other expense paid to date, except a mortgage of $2,500, interest being paid to date, said mortgage held by M. L. Ins. Co. of New York, and take farm subject to $3,171.43 mortgage held by Loan Association of Rochester, N. Y. This amount being more or less, but not to exceed $3,300, Fish & Son to take Grand Avenue house subject to said $2,500 mortgage.

" ROCHESTER, *August* 15, 1893.

"J. A. & N. L. BARR.
"HENRY L. FISH & SON."

The Lyell road property was sold in the mortgage foreclosure on the same day and after that contract was made. It was bid off by the Barrs, and a referee's deed made to them.

*Frederick A. Mann*, for the appellants.

*John A. C. Wright*, for the respondent.

BRADLEY, J. :

The main question is whether or not, when the rent in question accrued, the defendants had the possession of the Grand avenue property, and that for the purposes of this review is dependent upon

the question whether or not the defendants then had a right to the possession under their contract with the Barrs. This is so because independent of that fact the finding of the jury upon the evidence is deemed conclusive.

Less than two months before the contract was made the defendants became agents of the Barrs to rent the Grand avenue premises. Thereafter, and after the sale on the mortgage foreclosure of the Lyell road property, bid off by the Barrs and the referee's deed taken by them, the defendants rented the Grand avenue house and lot to a tenant, from whom was derived the rent fund in question. No written lease was made, nor did the defendants apparently assume to represent the Barrs in renting to such tenant. If, therefore, the defendants had the right to the possession of that house and lot by virtue of the contract before mentioned, it may be here assumed that they took the possession through the tenant who went into occupation, as he may in that case be deemed to have held under them. It is otherwise if they had no such right. Then the defendants would not be treated as having a relation to the premises hostile to that of the Barrs in whose behalf they had accepted the relation of agency. There are no exceptions requiring consideration.

It is insisted on the part of the defendants that the verdict was so against the weight of the evidence as to require the direction of a new trial.

The evidence on the part of the defendants is to the effect that, by arrangement between them and John Shaw, the owner of the Lyell road property, they undertook to make some disposition of it. The precise nature of the understanding does not appear. They thereupon had some negotiations with the Barrs, which resulted in the contract of August 15, 1893, in which it is stated that the land was then "under foreclosure sale and about to come into the hands" of the defendants, "in which event said Barr Bros. agree to trade" the Grand avenue house and lot as there stated. It was then contemplated between the parties to the contract that the defendants would take the title to the Lyell property on the foreclosure sale to be made that day. The sale was made, the property bid off by Shaw pursuant to an understanding between him and the defendants.

The required ten per cent was not paid. The sale was held open

until two P. M. In the meantime one of the defendants and Shaw, being so advised by the lawyer having charge of the foreclosure proceedings, and concluding that it would be a shorter way to the result to have the Barrs bid off the property, called upon the plaintiff and informed him that the sale was held open until two P. M., and it may be assumed that they suggested to him that he bid in the property. He did so. The Barrs decline to convey the Grand avenue property to the defendants because the event which was to render the contract available to them, to wit, that the Lyell road property should come into their hands, did not occur. It is quite evident that the defendant, when he made the suggestion to Barr to bid off the property, had in view the conveyance of the Grand avenue lot to the defendants pursuant to the contract. He testified that he was advised by the lawyer that it would simplify matters to have the referee's deed made directly to the Barrs; that he so informed the plaintiff, who promised to accede to that view, and thereupon he was present and bid off the property.

This is corroborated by the testimony of Shaw. And there is evidence on the part of the defendants tending to prove that the Barrs, after the purchase, promised to carry out the arrangement by conveying the Grand avenue lot to the defendants, and directed the preparation of a deed, which was drawn accordingly, but never was executed.

The plaintiff, by his evidence, tends to give a different phase to the transaction. His evidence is to the effect that he did not bid off the property and take the referee's deed in pursuance or in consummation of the contract with the defendants, but independent of it; that he wanted the property, and as Shaw was unable to complete his purchase by payment of the requisite percentage, a resale was had at which he made the purchase, the payment and took the deed, and that he did not then or thereafter promise to convey the Grand avenue property under the contract, nor did he direct the preparation of a deed for that purpose, or in any manner recognize any right of the defendants to a conveyance of it. While it is true that the Barrs did not interfere with the right of the defendants to become the purchasers of the Shaw property, and by that means put themselves in a position to require the performance of the contract, the supposition is quite reasonable that the plaintiff was by

the defendants given the opportunity to become the purchaser with a view in that direct manner to have the title taken by the Barrs in performance of the contract on the part of the defendants, and the weight of the evidence as represented by the record is apparently in that direction. Nevertheless this was a question of fact upon the evidence. It was fairly submitted to the jury, and in such manner that no further direction was requested by the defendants. There may have been an advantage had by the jury in seeing and hearing the witnesses which is not made fully apparent by the record here. And the trial judge after a careful review of the evidence, as appears by his opinion, denied the motion for a new trial.

The conclusion is not, therefore, fairly justified on this review that the verdict was so against the preponderance of evidence as to require the direction of a new trial.

The trial of the issues in this action presented questions of strictly legal rights and involved the determination of the question whether or not the defendants were in the actual possession of the Grand avenue premises at the time the rent in question accrued. The effect of the verdict was that they were not then in such possession for the reason, as it must be inferred, that in renting the property they acted in their relation as agents of the Barrs.

It is unnecessary here to inquire what, if any, equitable rights or remedy the defendants may have arising out of the contract in view of the circumstances under which Barr obtained the title to the Lyell road property.

There was no equitable defense set up for trial in this action

The judgment and order should be affirmed.

DWIGHT, P. J., LEWIS and WARD, JJ., concurred.

Judgment and order affirmed.